```
                  UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA
                        Alexandria Division


XULI ZHANG,                        )
                                   )
     Plaintiff,                    )
                                   )
          v.                       )   Civil Action No. 1:10-cv-1329
                                   )
POLICE S. REGAN AND POLICE         )
     PEC M. GREEN,                 )
                                   )
     Defendants.                   )
```

MEMORANDUM OPINION

This matter is before the Court on the parties' motions for summary judgment, which present the question of whether the plaintiff was falsely arrested in violation of 42 U.S.C. § 1983. The Court concludes that the defendant's motion for summary judgment shall be granted, and that the plaintiff's motion for partial summary judgment shall be denied.

I.   PROCEDURAL HISTORY

The plaintiff filed a Complaint with this Court on November 22, 2010,[1] alleging various causes of action and requesting compensatory and punitive damages. The defendants filed their Motion to Dismiss, which the Court granted in part. The Court did not grant the Motion to Dismiss on the plaintiff's claim

---

[1] On December 1, 2010, the plaintiff filed an Amended Complaint that was substantially identical to the original Complaint.

that the defendants arrested her without probable cause in violation of 42 U.S.C. § 1983, instead converting the motion into a motion for summary judgment pursuant to Rule 12(d) and referring the converted motion to the undersigned Magistrate Judge for further proceedings. On May 19, 2011, the undersigned entered an order setting the briefing schedule for motions for summary judgment pursuant to the Court's order. The parties' motions for summary judgment were to be submitted by June 17, 2011, oppositions by July 8, 2011, and replies by July 15, 2011.

### A. Motions for summary judgment

The defendants timely filed their motion for summary judgment. (Docs. 81 & 82.) On July 8, 2011, the plaintiff belatedly filed her Motion for Partial Summary Judgment.[2] (Doc. 98.) This motion was filed after the due date for the parties' motions, but the undersigned will, in the interests of substantial justice, consider this submission along with the defendants' Motion for Summary Judgment.

On July 8, 2011, the plaintiff filed an opposition to the defendants' Motion (Docs. 100, 101 & 102), as well as several other documents that appear to be part of the same overall submission. (Docs. 84, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96,

---

[2] The plaintiff's motion purports to seek summary judgment on a single issue, but in fact addresses her entire claim. The Court will therefore treat the plaintiff's motion as part of her broader opposition to the defendants' motion.

2

97, 98.) The plaintiff filed several more documents after the date on which oppositions were due (Docs. 103, 104, 105, 106, 107), but before July 15, 2011, when replies were due. The Court will exercise its discretion and treat these documents as part of the plaintiff's opposition to the defendants' Motion.[3]

On July 28, 2011, upon the parties' consent to magistrate judge jurisdiction, United States District Judge T.S. Ellis, III referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The undersigned, sitting as the Court, therefore considers the matters before it with the full authority granted by § 636(c).

## B. Related Motions

On July 15, 2011, the defendants filed a Motion to Strike Plaintiff's Pleadings, arguing that the plaintiff's submissions on summary judgment violated page limits under Local Civ. R. 7(F) and did not constitute proper evidence under the Federal Rules of Evidence and Federal Rules of Civil Procedure. (Docs. 108 & 109.) A few days later, on July 20, 2011, the plaintiff filed her Motion to Strike Defendant's Hearsay, False Statemetns [sic] and Erred [sic] Facts In Their Motion for Summary Judgement [sic] (Doc. 117), and a non-substantive Motion to

---

[3] The plaintiff filed additional documents after the July 15, 2011 deadline for submitting reply briefs. The undersigned disregards these documents as untimely.

Admitt [sic] Evidences. (Doc. 119).

Having considered these motions and related submissions, the Court will exercise its discretion to address the parties' motions for summary judgment using all the evidence and other materials submitted for consideration before the end of the briefing period. See Foman v. Davis, 371 U.S. 178, 181-82 (1962) ("It is . . . entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities."); see also Fed. R. Civ. P. 1, 8(e). Accordingly, the defendants' Motion to Strike (Doc. 108), the plaintiff's Motion to Strike (Doc. 117), and the plaintiff's Motion to Admitt Evidences [sic] (Doc. 119) are hereby DENIED.

On July 20, 2011, the plaintiff also filed a Motion to Declare Ineffetive [sic] Decision by Dupty [sic] Clerk Supreme Court of Virgina [sic] (Doc. 121). The Court denied the plaintiff's Motion to the extent that the plaintiff cannot appeal a decision of the Virginia Supreme Court to this Court, but deferred its ruling on whether the exhibits referred to by the motion may be considered on summary judgment. Having considered the matter fully, the Court now concludes that the exhibits in question, which relate to the plaintiff's plea in Virginia state court a few months after the arrest, are irrelevant, and that therefore the plaintiff's Motion must be

4

and is DENIED.

Having disposed of the non-substantive motions, the Court will now turn to the merits of the parties' motions for summary judgment.

## II.   UNDISPUTED FACTS

Based on the parties' pleadings, motions, affidavits, declarations, and other submissions, the Court finds that the following facts are not in dispute.

On November 29, 2008, the plaintiff, Ms. Xuli Zhang, was shopping at the Ross Dress for Less, Inc. store ("Ross") in the Seven Corners Shopping Center, Fairfax County, Virginia. (Declaration of Thomas Stewart Decl., Doc. 82-3, at ¶¶ 3, 7.) Around 1 P.M., the plaintiff entered Ross to look for clothes. (Deposition of Xuli Zhang, Doc. 82-4, at 106-07.)  At some point during her visit, she slipped and fell on white lotion on the floor.  (Zhang Depo. at 107-08.)  Thomas Stewart, the manager of the Ross store on that day, was notified of the incident and spoke to the plaintiff.  (Stewart Decl. at ¶¶ 2-3.)  Meanwhile, Ross security guards cleaned up the liquid.  (Stewart Decl. at ¶ 3.)

Mr. Stewart explained to the plaintiff the claims process for injuries in Ross stores, and provided her with contact information for the store's claims adjuster.  (Stewart Decl. at ¶¶ 4-5.)  The plaintiff later sat at a table near the front door

5

of the store and used her cellular phone to make several telephone calls. She called the claims number provided by Mr. Stewart several times, apparently fruitlessly, and called a friend. (Stewart Decl. at ¶¶ 11, 13; Doc. 87 at 7; Doc. 89 at 2; Doc. 91 at ¶¶ 2, 5.)

After the plaintiff had been seated at the table for a while, she called 911 to summon Emergency Medical Services (EMS). (Declaration of Jon Ronan, Doc. 82-6, at ¶ 3.) The computerized record of the plaintiff's 911 call indicates a request for police response to the slip and fall incident, a complaint that store management was not cooperating, and a reference to back pain. (Ronan Decl. at ¶ 3.) Emergency medical personnel from Fairfax County Fire and Rescue Department Firefighter/EMT, namely, George Samartino and Jorge Arias, arrived several minutes later. (Declaration of George Samartino, Doc. 82-7, at ¶¶ 2-4; Declaration of Jorge Arias, Doc. 82-8, at ¶¶ 2-4.)

Upon arrival, the Firefighters/EMTs observed no visual indications that the plaintiff had a life-threatening injury. (Samartino Decl. at ¶ 6; Arias Decl. at ¶ 6.) She was upset, but despite repeated requests, would not let the Firefighters/EMTs check her vital signs. (Samartino Decl. at ¶ 6; Arias Decl. at ¶ 6.) The plaintiff reiterated her request for a police response and stated that she did not want to go to

the hospital or receive other EMS services at that time. (Stewart Decl. at ¶¶ 13-14; Samartino Decl. at ¶¶ 6, 9-10; Arias Decl. at ¶¶ 6, 10; Pl's. Response to Def's. First [sic] for Admission, Doc. 82-14, at ¶ 12; Doc. 91 at ¶ 12.) Specifically, Ms. Zhang declined treatment on the grounds that she wanted the police to arrive and investigate her slip-and-fall incident. (Doc. 91 at ¶ 12.)

At approximately 3 P.M., the defendant officers with the Fairfax County Police Department arrived on the scene. (Stewart Decl. at ¶ 14; Declaration of Sean Regan, Doc. 82-1, at ¶ 2; Declaration of Michael Green, Doc. 82-2, at ¶ 2; Samartino Decl. at ¶ 8; Arias Decl. at ¶ 8.) They entered the store together and saw the Firefighters/EMTs with the plaintiff, who was still seated at the table in the front of the store. (Regan Decl. at ¶¶ 2-3, 5; Green Decl. at ¶¶ 2-3, 5; Samartino Decl. at ¶ 9; Arias Decl. at ¶ 9.) One of the Firefighters/EMTs, George Samartino, noticed the defendants and motioned for them to speak with him. (Samartino Decl. at ¶ 8; Arias Decl. at ¶ 8; Regan Decl. at ¶ 2; Green Decl. at ¶ 3; Stewart Decl. at ¶ 14.) The plaintiff did not hear the conversation between the Firefighters/EMTs and the defendants. (Zhang Depo. at 189-90; Doc. 96 at 3.)

Mr. Samartino told the defendants that the plaintiff had slipped and fallen but had no obvious signs of injury, and that

7

the plaintiff was principally concerned with getting a copy of the store's video surveillance.  (Samartino Decl. at ¶ 8; Arias Decl. at ¶ 9; Regan Decl. at ¶¶ 3-4a;[4] Green Decl. at ¶¶ 3-4.)

Mr. Stewart identified himself to the defendants as the store manager, and told them that the plaintiff had been asked to leave.[5]  (Regan Decl. at ¶ 4a; Green Decl. at ¶ 4; Stewart Decl. at ¶ 14.)  Mr. Stewart also told the defendants that the plaintiff had demanded $150 in compensation and a copy of the video surveillance before she would leave the store.  (Regan Decl. at ¶¶ 3-4bl; Green Decl. at ¶ 4; Stewart Decl. at ¶ 14.)  Defendant Regan asked Mr. Stewart if he would be willing to prosecute the plaintiff for trespassing if she refused to leave the store after having been asked to leave.  (Regan Decl. at ¶ 9; Stewart Decl. at ¶ 18.)  Mr. Stewart said that he would.  (Regan Decl. at ¶ 9; Stewart Decl. at ¶ 18.)

The parties dispute the substance of the defendants' subsequent conversation with the plaintiff, but it is undisputed that the defendants did not immediately arrest her.  (Regan

---

[4] The Regan Declaration (Doc. 82-1) contains two paragraphs numbered as "4."  For clarity, the paragraphs will be referred to as "4a" and "4b."

[5] The parties dispute whether Mr. Stewart personally told the plaintiff to leave.  They do not dispute that Mr. Stewart told the defendants that he had instructed the plaintiff to leave.  They do not dispute that defendant Regan instructed the plaintiff to leave the premises or face possible arrest.

Decl. at ¶ 5; Green Decl. at ¶ 5.) The officers spoke with the plaintiff at some length, attempting to convince her to leave without arresting her. (Regan Decl. at ¶¶ 5-6, 8; Green Decl. at ¶¶ 5-9; Stewart Decl. at ¶¶ 16-17.) It is likewise undisputed that during that conversation, the Firefighters/EMTs and defendant Green heard defendant Regan tell the plaintiff several times that she could either leave the store, or go with the Firefighters/EMTs to the hospital. (Green Decl. at ¶ 5; Samartino Decl. at ¶¶ 8-10.) The plaintiff does not offer contrary testimony.

After defendant Regan's ultimatum, the plaintiff stood up as if to leave, then abruptly stopped. (Stewart Decl. at ¶ 19; Regan Decl. at ¶¶ 11-12; Green Decl. at ¶ 9; Doc. 91 at ¶ 25.) Ms. Zhang testified at deposition that she stopped because she had become dizzy and could not see. (Zhang Depo. at 155.) She also testified that she attempted to say "I cannot walk," but because of her thick Chinese accent and her difficulty with spoken English, her utterance may have sounded like "I cannot work." (Zhang Depo. at 155-56, 165-68.) At any rate, Officer Regan arrested her and transported her to the Fairfax County Adult Detention Center. (Regan Decl. at ¶¶ 12-13; Green Decl. at ¶ 9.) He brought her before a magistrate, who charged her

with trespassing.[6] (Regan Decl. at ¶¶ 13-14.)

### III. APPLICABLE LAW

The sole issue before the Court is whether summary judgment is proper on the plaintiff's claim under 42 U.S.C. § 1983 that the defendants violated her civil rights by arresting her without probable cause.[7] Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, affidavits, and other materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 283 (4th Cir. 2004). Evidence is construed in the light most favorable to the non-movant, and the Court draws all reasonable inferences in favor of the non-moving party.[8] See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hill,

---

[6] There were subsequent proceedings in Fairfax County General District Court and other Virginia courts, but those are not relevant to these motions.

[7] The plaintiff's submission is moot to the extent that it does not relate to the remaining claim.

[8] The defendants assert the defense of qualified immunity, which shields an officer from liability for civil damages if the conduct does not violate a clearly established right. See Pearson v. Callahan, 555 U.S. 223, 231 (2009). The Court does not reach the qualified immunity issue because the undisputed facts establish that the defendants did not arrest the plaintiff without probable cause, and therefore could not have violated 42 U.S.C. § 1983.

354 F.3d at 283.  When the parties have made cross-motions for summary judgment, as they have here, the Court examines whether either party is entitled to judgment as a matter of law.  In considering the evidence, however, the Court makes no rulings on the credibility of the witnesses, nor does the Court attempt to resolve disputed issues of material fact.

### A. False arrest under 42 U.S.C. § 1983

U.S. Code Title 42, Section 1983 provides a cause of action for plaintiffs whose rights have been violated under the Fourth Amendment, such as through a false arrest.  Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002); Rogers v. Pendleton, 249 F.3d 279, 294 (4th Cir. 2001).  Consequently, the Court must determine whether the undisputed evidence demonstrates a violation of the Fourth Amendment.

The Fourth Amendment safeguards "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures."  U.S. Const. amend. IV.  When police officers have probable cause to believe that a person has committed a crime in their presence, however, the Fourth Amendment allows them to make a warrantless arrest.  See Virginia v. Moore, 553 U.S. 164, 178 (2008); Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001); United States v. Williams, 10 F.3d 1070, 1073-74 (4th Cir. 1993).  The question of whether the arresting officer had probable cause to make the arrest is

11

an objective inquiry, based on the totality of the circumstances.  Illinois v. Gates, 462 U.S. 213, 230 (1983); Williams, 10 F.3d at 1074.  The facts and circumstances within the officer's knowledge must be sufficient to warrant a prudent person, or one of reasonable caution, in believing that the suspect has committed or is committing an offense.  Williams, 10 F.3d at 1073-74, citing Michigan v. DeFillippo, 443 U.S. 31, 37 (1979).  Two factors govern the determination of probable cause in any situation: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct.  Brown, 278 F.3d at 367-68.  The plaintiff here was charged under Virginia law with the offense of trespassing.  If the defendant officers had probable cause to believe that the plaintiff was trespassing, summary judgment is proper on the false arrest claim.

**B.     Trespassing under Virginia law**

On the day of the arrest, November 29, 2008, Virginia law stated, in relevant part: "If any person without authority of law . . . remains upon the lands, buildings or premises of another, or any portion or area thereof, after having been forbidden to do so, either orally or in writing, by the owner, lessee, custodian . . . or other person lawfully in charge thereof . . . he shall be guilty of a Class 1 misdemeanor."  Va. Code Ann. § 18.2-119 (2009).  Though not explicit from the

statutory language, this section includes an intent requirement. See Commonwealth v. Hicks, 596 S.E.2d 74, 79 (Va. 2004); O'Banion v. Commonwealth, 531 S.E.2d 599, 603-04 (Va. App. 2000), overruled on other grounds by Harris v. Commonwealth, 650 S.E.2d 89 (Va. 2007); Reed v. Commonwealth, 366 S.E.2d 274, 278 (Va. App. 1988), citing Campbell v. Commonwealth, 41 Va. 791 (1843). No trespassing occurs if a defendant believes that she has a right to be on the premises because that belief negates criminal intent. Reed, 366 S.E.2d at 278. The type of belief that shields a defendant from conviction is a "sincere, although perhaps mistaken, good faith belief that one has some legal right to be on the property. The claim need not be one of title or ownership, but it must rise to the level of authorization." O'Banion, 531 S.E.2d at 603, quoting Reed, 366 S.E.2d at 278.

## IV.  ANALYSIS

The central factual issue in this case is whether the officers could reasonably have believed that plaintiff intentionally remained upon the Ross premises after she was forbidden to do so. The record demonstrates no genuine dispute of material fact that the plaintiff, as the situation appeared at the time of the arrest, had remained on the Ross premises after she had been told to leave. As such, the defendants reasonably believed that the plaintiff had committed and indeed, was committing the crime of trespassing under Virginia law.

13

There is some dispute about the details of the conversation between the defendants and the plaintiff. The plaintiff objects that she was not told to leave by Mr. Stewart or defendant Green. She does not dispute, however, that defendant Regan twice instructed her to leave, and that she did not obey his instructions. Officer Regan's instructions to the plaintiff, based on his interactions with Mr. Stewart, were adequate to put Ms. Zhang on notice that she was not authorized to remain on the premises. Having instructed the plaintiff to leave, and having heard Mr. Stewart's and Mr. Samartino's explanation of the situation before their arrival, the officers had ample reason to believe that the Ms. Zhang's continued presence on the premises was intentional, unauthorized, and unlawful.[9]

Ms. Zhang claims that she never refused to leave or told the officers that she was demanding money and the surveillance tape as a condition of departure. Even in the light most favorable to the plaintiff, these facts do not preclude summary judgment against her. The inquiry here is not limited to

---

[9] The plaintiff admits that she did not overhear the conversation between the defendants, Mr. Samartino, and Mr. Stewart, and offers no personal knowledge or other evidence of that conversation. The central factual question in these motions is what the officers reasonably could have believed about the status of Ms. Zhang's authorization to be on the Ross premises. Probative evidence here, therefore, must come mainly from the officers' interactions with the plaintiff and other witnesses.

whether she <u>refused</u> to leave the Ross store. Virginia law forbids intentionally <u>remaining</u> on the premises without authorization. Nor does this inquiry rest on a determination of whether the plaintiff was, in fact, trespassing. That issue was properly committed to the courts of Fairfax County. Rather, the Court must examine the facts as they reasonably appeared to the officers at the time of the arrest.

It is undisputed that Mr. Stewart told the defendants that he wanted the plaintiff to leave, and that he was willing to prosecute the plaintiff if she failed to leave.[10] It is likewise undisputed that Mr. Stewart and the Firefighters/EMTs had provided the defendants with consistent descriptions of the plaintiff's conduct in the Ross store. Based on these facts, the officers could have reasonably concluded that the plaintiff was overstaying her welcome in bad faith.

The plaintiff also claims that she was justified in remaining at the front of the Ross store because of her injuries from the slip and fall. She argues that she was arranging to see a Chinese doctor, and was waiting in the Ross store while

---

[10] The plaintiff also argues that because Mr. Stewart was not present at the time of her arrest, he could not have told her to leave, and therefore she could not have been trespassing. She makes a similar argument that Officer Green could not have told her to leave the premises because he was not in her immediate vicinity when she was arrested. Neither argument is supported by evidence in the record, however, and neither creates a genuine issue of material fact.

15

she made the arrangements. (Doc. 91 at ¶ 20.) The Ross store was not the only place where the plaintiff could make such arrangements. The plaintiff had declined medical treatment by the Firefighter/EMT personnel. Mr. Stewart was not obliged to permit her to use Ross property as a staging ground for her non-emergency medical treatment.

Even if, as the plaintiff claims, she was unable to walk at the moment she finally stood up to leave, she had at that point remained on the premises far longer than she was authorized to do so. She had refused treatment by the Firefighters/EMTs because she wanted the police to investigate her slip-and-fall incident. She had twice failed to heed defendant Regan's instructions that she should leave the premises because she was no longer allowed to be there. As the situation would reasonably have appeared to the defendants at that time, the plaintiff appeared to be further delaying her departure from the premises.

The plaintiff protests that she was unable to communicate with defendant Regan because of language difficulties. (Doc. 87 at 8; Doc. 91 at ¶ 25.) Whether or not the arrest stemmed in part from a miscommunication, Officers Regan and Green were told by Mr. Stewart and the emergency responders that Ms. Zhang was being uncooperative. Their subsequent experiences with the plaintiff confirmed this testimony. The Court sees no

difficulty in concluding that even if it had been impossible for Ms. Zhang to leave the premises without assistance, and even if she could not have effectively communicated this fact to the defendants, Ms. Zhang's prior stubbornness justified an inference that her sudden inability to walk was a ploy calculated to further delay her departure.

At the time of the arrest, defendants Regan and Green reasonably believed that Ms. Zhang was displaying the recalcitrance that Mr. Stewart and Mr. Samartino had described, and that had characterized the rest of her encounter with the defendants.  The plaintiff's belated attempts to avoid arrest could not wipe the slate clean of her previous decision to remain on the premises without authorization.  The defendants had probable cause to believe that the plaintiff was violating and had violated Virginia law in their presence, and therefore were justified in making the arrest.

## V.   CONCLUSION

Finding no dispute of material fact on this record, the Court therefore holds that the defendants' motion for summary judgment on the remaining § 1983 claim is GRANTED.  The Court further holds that the plaintiff's motion for partial summary judgment is DENIED.  The Court will enter an appropriate order under Rule 58.

```
                                    /s/
                         THERESA CARROLL BUCHANAN
                         UNITED STATES MAGISTRATE JUDGE
```

August 17, 2011
Alexandria, Virginia